UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARBARA JAMILIK,<br>      Plaintiff,<br><br>v.<br><br>YALE UNIVERSITY, TOM JASON,<br>PATRICK MCKENNA, MARY VARGA,<br>and KARA TAVELLA,<br>      Defendants. | :<br>:<br>:<br>:   Civil Action No. 3:06 CV 0566 (PCD)<br>:<br>:<br>:<br>:<br>: |

**RULING ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S
MOTION TO JOIN PARTY DEFENDANT AND AMEND THE COMPLAINT**

On July 28, 2006, Defendants Yale University, Tom Jason, Patrick McKenna, Mary Varga, and Kara Tavella moved to dismiss the Eighth Count of the Complaint [Doc. No. 23]. On December 5, 2006, Plaintiff Barbara Jamilik moved to add Lewis Matzkin as a defendant and amend and supplement the Complaint [Doc. No. 32]. For the reasons stated below, Defendants' Motion to Dismiss the Eighth Count of the Complaint is **granted,** and Plaintiff's Motion to Join Party Defendant and Amend the Complaint is **granted in part and denied in part.**

**I.   BACKGROUND**[1]

Plaintiff Barbara Jamilik was until recently and at all times relevant to her complaint an employee of Yale. (See Compl. ¶ 1; Pl.'s Mem. in Supp. of Mot. to Amend at 4.) Defendants Tom Jason, Patrick McKenna, and Mary Varga, also Yale employees, each had supervisory authority over Plaintiff during times relevant to her complaint; Defendant Kara Tavella is a Yale human resources representative allegedly involved in personnel decisions related to the Plaintiff. (Id. Fourth Count ¶¶ 15-18, 20.) On or about May 28, 2004, Plaintiff learned that another Yale

---

[1] For the purpose of reviewing a motion to dismiss, the Court takes as true all of the allegations contained in the Plaintiff's Complaint and considers them in the light most favorable to the Plaintiff. Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 390 n. 1 (2d Cir. 2001).

employee, Stephen Zotto, was earning $84,200 annually for performing essentially the same duties and responsibilities as she did. (Compl. ¶¶ 7-10.) At the time, she earned a salary of $74,550. (Id. ¶ 7.) Plaintiff alleges that she notified Yale of this disparity, but Yale "refused and failed to remedy the pay disparity or to make the plaintiff whole." (Id. ¶ 13.) Plaintiff filed discrimination claims against Yale with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). (Id. ¶ 3). After receiving a proper release of jurisdiction from CHRO (id.), Plaintiff filed this action against Yale and individually named employees, claiming violations of the Equal Pay Act, 29 U.S.C. § 206(d), the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3, and the Connecticut Fair Employment Practices Act, CONN. GEN. STATS. §§ 31-75 and 46-60(a)(1), and bringing claim pursuant to state law for the intentional infliction of emotional distress.

     Plaintiff alleges that the Defendants have consistently and continuously harassed Plaintiff in retaliation for filing a complaint against them with the CHRO. According to Plaintiff, the Defendants have intentionally excluded Plaintiff from essential work meetings and social gatherings. (Compl. Fourth Count ¶ 21.) They have denied Plaintiff access to files necessary for her to perform the functions and duties of her job, and they have taken significant job responsibilities away from her. (Id.) Defendants have also implemented demeaning and intrusive ways of interfering with her ability to do her job, including insisting that a 'shadow' follow her around at work, when no other employees are required to do the same. (Id.) Plaintiff further alleges that Defendants have forced Plaintiff to give her unfinished work product to coworkers in order for them to complete the work and take credit. (Id.) Defendants allegedly subjected Plaintiff to discipline without cause and issued her a "final written warning," at which

time she was verbally warned that her employment might be terminated in the future.  (Id.) Plaintiff's supervisors have insinuated that the harassing work environment would continue so long as she pursued her legal claims.  (Id.)

Based on the foregoing allegations, Plaintiff claims that the Defendants' actions have been "engaged in willfully and intentionally and have been designed to intimidate and harass the plaintiff and cause her to cease her employment with the defendant Yale." (Compl. Eighth Count ¶ 19.)  She further alleges that the Defendants' conduct was extreme and outrageous and caused her to suffer severe emotional distress, including "sleeplessness, anxiety, and physical discomfort," and that Defendants "intended to cause [her] to suffer severe emotional distress, or knew or should have known that emotional distress was likely to result from their conduct." (Id. ¶¶ 20, 21.)  In July, 2006, Defendants moved to dismiss this Eighth Count of the Complaint.

In December, 2006, Plaintiff moved to amend and supplement the Complaint and to add Lewis Matzkin as a defendant in this action.  According to Plaintiff, Mr. Matzkin became her supervisor in April, 2006, and in August, 2006 he engaged in behavior which caused her to fear for her personal safety.  (Pl.'s Mem. in Supp. of Mot. to Amend at 4.)  Plaintiff seeks to add allegations regarding Mr. Matzkin's alleged behavior in August, 2006, a warning letter she received from Yale in August, 2006, and her termination from her employment in September, 2006.  (Id.)  Plaintiff filed a complaint against the Defendants and Mr. Matzkin for retaliatory discharge with the CHRO on November 3, 2006, and Plaintiff has not obtained a release from CHRO for this second complaint.

## II.   DISCUSSION

### A.   Motion to Dismiss Eighth Count of Complaint

In the Eighth Count of the Complaint, Plaintiff brings a state law tort claim against Defendant for the intentional infliction of emotional distress.  Plaintiff alleges that the Defendants retaliated against her for filing a complaint with the CHRO by excluding her from work and social activities, wrongfully disciplining her, removing some of her essential duties and giving them to younger men, and failing to adequately respond to her repeated complaints about their conduct.  Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss this claim on the grounds that the conduct alleged by Plaintiff is not severe enough to sustain a claim for intentional infliction of emotional distress.  Plaintiff responds that Defendants' alleged conduct were not isolated incidents but amounted to a pattern of retaliatory harassment which occurred over the course of two years and which exceeded the course of acceptable mistreatment one might anticipate receiving at work.

In deciding Defendants' motion to dismiss, the Court accepts as true the material facts alleged in the Complaint and draws all reasonable inferences in Plaintiff's favor.  See Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir. 1995) (citing Hill v. City of New York, 45 F.3d 653, 657 (2d Cir.1995)).  Dismissal of a complaint under Fed. R. Civ. P. Rule 12(b)(6) is appropriate only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "  Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (courts should not grant a Rule 12(b)(6) motion to dismiss merely because recovery seems unlikely or remote, as "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

In Connecticut, to prevail on a claim of intentional infliction of emotional distress, a Plaintiff must prove: "(1) that the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253 (1996). See also Benton v. Simpson, 78 Conn. App. 746, 753 (2003); Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000); Massey v. Town of Windsor, 289 F. Supp. 2d 160, 165 (D. Conn. 2003); Kilduff v. Consential Inc., 289 F. Supp. 2d 12, 21 (D. Conn. 2003). Liability for the intentional infliction of emotion distress requires a showing that Defendants' conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton, 254 Conn. at 211. The Defendants' conduct, however, "cannot be merely rude, tactless or insulting." Garris v. Dep't of Corr., 170 F. Supp. 2d 182, 189 (D. Conn. 2001). The determination of "whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Appleton, 254 Conn. at 210. "Courts carefully review claims for intentional infliction of emotional distress in the employment context," Boenig v. Potter, No. Civ. A. 303CV2275CFD, 2005 WL 736822, at *5 (D. Conn. March 28, 2005), and federal courts in this district, interpreting Connecticut law, have interpreted the qualification of extreme and outrageous conduct strictly. Golnik v. Amato, 299 F. Supp. 2d 8, 15 (D. Conn. 2003) (citing cases).

Plaintiff alleges that Defendants subjected her to adverse employment actions, motivated

by discriminatory animus, which caused her extreme emotional distress. The operative issue for the Court to evaluate is whether "the employer's conduct, not the motive behind the conduct, is extreme or outrageous." Armstead v. The Stop & Shop Co., Inc., 200 WL 1343245, at *5 (quoting Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000)). See also Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117, 123 (D. Conn. 1998) ("The employer's motive ... is not relevant to whether the act was outrageous; it is the act itself which must be outrageous."). Although certain conduct motivated by discriminatory animus may be considered indecent or immoral by contemporary cultural standards, and is unlawful under state and federal law, such conduct may not be labeled "extreme and outrageous" unless it has a "natural tendency to have an extraordinarily negative effect upon the emotional well-being of any person who is exposed or subject to it." Scandura v. Friendly Ice Cream Corp., No. CV 930529109S, 1996 WL 409337, at *2-3 (Conn. Super. Ct. June 26, 1996). The conduct alleged by Plaintiff, though arguably demeaning, is not so naturally humiliating or devastating to a person's emotional well-being to rise to the level of conduct which satisfies a claim of intentional infliction of emotional distress. See, e.g., White v. Martin, 23 F. Supp. 2d 203, 208 (D. Conn. 1998), aff'd, 198 F.3d 235 (2d Cir. 1999) (employer's alleged discrimination based on plaintiff's gender, including denial of a promotion, discipline, and harassment, was not extreme or outrageous); Hill v. Pinkerton Sec. & Investigation Servs., Inc., 977 F. Supp. 148, 160 (D. Conn. 1997) (paying an African-American female less money than her counterparts and disciplining, reprimanding, and transferring her to two other locations in retaliation was not extreme and outrageous); DeLeon v. Little, 981 F. Supp. 728, 737-38 (D. Conn. 1997) (conduct was not sufficiently outrageous where city supervisor allegedly ordered employee to purchase illegal drugs, stand guard while

supervisor ingested same, perform personal errands for supervisor and tasks for a private employer, and where supervisor implemented a discriminatory sick leave policy, threatened to replace employee with a person of a different race, and repeated degrading and humiliating criticism of employee in front of others); Johnson v. Cheseborough-Pond's USA Co., 918 F. Supp. 543, 551 (D. Conn. 1996) (conduct not sufficiently outrageous where plaintiff received negative performance reviews, was suddenly terminated, and was physically escorted from premises); Williams v. Perry, 960 F. Supp. 534, 542 (D. Conn. 1996) (conduct not sufficiently outrageous where plaintiff was subjected to racist comments regarding her interracial marriage, told that she would "never get anywhere in the department because of her relationship with an African-American man," disciplined more harshly and held to higher performance standards than male coworkers, and was assigned either no work or minor assignments considered unfitting for male coworkers.).  Compare Oppenheim v. Gruell, No. CV030472301S, 2005 WL 407594, at *5 (Conn. Super. Ct. Jan. 11, 2005) (defendants' vulgar and humiliating comments made about plaintiff in front of coworkers, coupled with physical intimidation, was extreme and outrageous); Denault v. Conn. Gen. Ins. Co., No. CV 950050418S, 1999 WL 549454, at *1, *15-16 (Conn. Super. June 29, 1999) (denying motion to dismiss claim of intentional infliction of emotional distress where Defendants allegedly made verbal insults and discriminatory slurs regarding Plaintiff employee's sexual orientation).

      On its face, the Complaint does not allege facts that "transcend the bounds of civilized society, regardless of whether Defendants' actions were objectionable and actionable on other grounds."  Massey, 289 F. Supp. 2d at 166.  Plaintiff has not alleged any public ridicule or humiliation.  See Armstead, 2003 WL 1343245 at * 5 ("one hallmark of a sufficiently stated

claim for intentional infliction of emotional distress is allegation of repeated and public ridicule."); Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 21 (1991). The fact that the allegedly retaliatory conduct accrued over the course of two years does not, as Plaintiff contends, does not make it extreme and outrageous. Joiner v. Chartwells, No. CIVA3:05CV845(JCH), 2005 WL 3499994, at *3 (D. Conn. Dec. 20, 2005) (alleged actions, "even if considered in the aggregate ..., consisted of routine employment action, such as disciplinary warnings, demotions, changed work assignments, and terminations, that do not give rise to a claim for the intentional infliction of emotional distress."); Williams v. Perry, 960 F. Supp. 534, 541 (D. Conn. 1996) (alleged harassment spanning seven years was not extreme and outrageous). Accordingly, Plaintiff has failed to state a claim upon which relief can be granted, and Defendant's motion to dismiss the Eighth Count of the Complaint is granted.

  **B.**  **Plaintiff's Motion to Amend the Complaint**

Plaintiff moves pursuant to Fed. R. Civ. P. 15(a) and (d) to amend and supplement the Complaint and to add Lewis Matzkin as a defendant. Defendants oppose this motion on the grounds that Plaintiff has not obtained a release of jurisdiction from the CHRO for the retaliation claim she filed with it in November, 2006, thereby depriving this Court of subject matter jurisdiction. Defendants also contend that the Plaintiff's motion violated this Court's scheduling order, which allowed the Plaintiff until July 10, 2006 to file a motion to join additional parties and/or amend the pleadings, and that this motion will cause undue delay in this case and undue prejudice to the Defendants.

Leave to file an amended complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The district court has discretion as to whether leave to amend should be

granted, Foman v. Davis, 371 U.S. 178, 182 (1962), but "that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing spirit of the Federal Rules." United States v. Cont'l Illinois Nat'l Bank & Trust, 889 F.2d 1248, 1254 (2d Cir. 1989) (citing FED. R. CIV. P. 1, which states that the rules are to be construed "to secure the just, speedy, and inexpensive determination of every action.").

Leave should be "freely given" in the absence of a stated or apparent reason to the contrary, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman, 371 U.S. at 182. "Mere delays, . . . absent a showing of bad faith and undue prejudice, do not provide a basis for a district court to deny the right to amend." State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981). "The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). A court may find that undue prejudice exists "when extensive additional discovery would be required, when further proceedings would be delayed significantly, or where an imminent danger exists that the moving party seeks to force a favorable settlement by abusive use of the discovery process." Naglieri v. Bay, 977 F. Supp. 131, 136 (D. Conn. 1997). In making this determination, the Second Circuit has noted that "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of showing prejudice." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).

### 1.     *Joinder of Additional Party*

Plaintiff moves to join Lewis Matzkin, her superior at Yale as of April, 2006, as a party defendant in this action.  Mr. Matzkin was not a party to the original complaint filed with the CHRO and accordingly was not a party to the claim released by the CHRO prior to Plaintiff's filing this action.  Connecticut General Statutes Sections 46a-100 and 46a-101(a) require a plaintiff to obtain a release from the CHRO prior to bringing an action in this Court for violation of Connecticut's employment discrimination laws.[2]  Where a plaintiff has failed to obtain a release from the CHRO, she has failed to exhaust her administrative remedies and this Court accordingly lacks subject matter jurisdiction.  <u>Desardouin v. United Parcel Serv., Inc.</u>, 285 F. Supp. 2d 153, 159 n.7 (D. Conn. 2003); <u>White</u>, 23 F. Supp. 2d at 206; <u>Okun v. Misiewicz</u>, No. CV9867084S, 2001 WL 985060, at *5 (Conn. Super. Ct. July 31, 2001).  Because Plaintiff has not obtained a release from the CHRO for her claims against Mr. Matzkin, first brought to the CHRO in November, 2006, the Court lacks subject matter jurisdiction over these claims.  Plaintiff is therefore not entitled to join Mr. Matzkin as a party defendant.  See <u>Sullivan v. Stein</u>, No. Civ. 3:03CV1203 (MRK), 2005 WL 465424, at *2 (D. Conn. Feb. 7, 2005) (holding parties may not amend their pleadings if doing so would be futile).

### 2.     *Amended Factual Allegations*

The proposed Amended Complaint adds allegations in the Complaint regarding

---

[2] Section 46a-100 provides in relevant part: "Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities ... and who has obtained a release from the commission in accordance with section 46a-83a or 46a-101, may also bring an action in the superior court." CONN. GEN. STATS. § 46a-100 (2004).  Section 46a-101 provides in relevant part: "No action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section."  § 46a-101(a).

Defendants' alleged retaliatory conduct in August and September of 2006. Specifically, the proposed Amended Complaint adds allegations that: (1) on August 9, 2006, Plaintiff was given a written warning as discipline and in retaliation for bringing discrimination claims before the CHRO and the EEOC (Am. Compl. Fourth Count ¶ 21(q)); (2) on August 9, 2006, Lewis Matzkin entered Plaintiff's office, shut the door, blocked the exit, and screamed at the Plaintiff, causing her to fear for her safety (id. ¶ 21(r)); and (3) on or about September 12, 2006, Plaintiff was terminated from her employment in retaliation for pursuing her discrimination claims before the CHRO and the EEOC. (Id. ¶ 21(s).) The allegations contained in Proposed Paragraphs 21(q) and 21(s) are reasonably related to the allegations contained in the original complaint for which Plaintiff obtained a release from the CHRO; they therefore do not raise new questions as to this Court's subject matter jurisdiction. Although Plaintiff moved to supplement the Complaint long after the pre-trial scheduling order deadline for doing so, she seeks to add allegations which occurred subsequent to the deadline. The reason for the timing of Plaintiff's motion is therefore satisfactory, and supplementing the allegations of Defendants' retaliatory conduct does not unduly prejudice Defendants. The allegations contained in Paragraphs 21(q) and 21(s) do not alter Plaintiff's claims and theories of liability, and so there is no reason why the proposed amendments would invite the parties to engage in extensive further discovery, file additional motions to dismiss, or otherwise significantly delay the proceedings. The addition of these paragraphs is therefore proper and will be permitted. Proposed Paragraph 21(r), however, relates to alleged acts committed by Mr. Matzkin, who, for the reasons stated above, will not be added as a party defendant. The allegations relating to Mr. Matzkin therefore cannot be considered reasonably related to the claims in the original CHRO complaint, and so the addition of proposed

Paragraph 21(r) will not be permitted.

### III.  CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss the Eighth Count of the Complaint [Doc. No. 23] is **granted.**  Plaintiff's Motion to Join Party Defendant and Amend and Supplement the Complaint [Doc. No. 32] is **granted in part and denied in part**.

SO ORDERED.

Dated at New Haven, Connecticut, this  24th  day of January, 2007.

                                                        /s/
                                    Peter C. Dorsey, U.S. District Judge
                                           United States District Court